— NO IFP
or payment

1  Andrew J. Klimkowski, State Bar No. 274716
   ANDREW KLIMKOWSKI
2  Address: 28842 Via Buena Vista
   San Juan Capistrano, CA 92675
3  Phone: (949) 689-5714
   Email: klimkowski.andrew@gmail.com
4
   Attorney for Plaintiff Pro Se,
5  Andrew Klimkowski

6

7

8              **IN THE UNITED STATES DISTRICT COURT**

9         **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

10

11  ANDREW KLIMKOWSKI,                    )  Case No. 8: 23-cv-01818-UA
                                          )
12          Plaintiff,                    )  **COMPLAINT FOR DECLARATORY**
                                          )  **AND INJUNCTIVE RELIEF**
13       vs.                              )
                                          )
14  U.S. DEPARTMENT OF EDUCATION;         )
    MIGUEL CARDONA in his official capacity )
15  as Secretary of the Department of Education; )
    AND DOES 1-50, INCLUSIVE,             )
16                                        )
            Defendants.                   )
17  _____ )

18       Plaintiff Andrew Klimkowski ("Plaintiff") brings this action for declaratory and

19  injunctive relief against Defendant U.S. Department of Education ("DOE") and Defendant Miguel

20  Cardona ("Secretary Cardona") for violating the Administrative Procedure Act ("APA"), 5 U.S.C.

21  §§ 533, 706. Plaintiff alleges on information and belief:

22                                **INTRODUCTION**

23  1.       On April 27, 2017, Plaintiff accidentally missed his annual income-recertification deadline

24  for his student loans through the U.S. Department of Education ("DOE").

25  2.       He learned of the missed deadline when FedLoan Servicing ("FedLoan") withdrew

26  $1,887.61 from his bank account on June 21, 2017. At the time, FedLoan was contracted by DOE

27  to be Plaintiff's student loan servicer. For the purpose of this complaint, FedLoan and DOE can be

28  used interchangeably.

3.      As result of missing a completely unnecessary paperwork-submission deadline, one time, FedLoan **capitalized $58,153.33** in interest onto the principal of Plaintiff's student loans—**ballooning the principal balance from $163,640.33 to $221,793.66**—at 7.63% interest that results in an <u>additional</u> $4,437.09 in interest each year.

4.      Plaintiff's actual interest rate is 7.88%, but DOE provides borrowers a 0.25% discount if the borrower grants them access to their bank account. <u>In fact, DOE has had access to Plaintiff's personal bank account since he began repayment approximately 12 years ago after Plaintiff graduated from law school in 2010.</u>

5.      DOE has recently acknowledged that it has been capitalizing interest when it was <u>not</u> required by statute. Notice of Proposed Rulemaking (NPRM) (Document ID: ED-2021-OPE-0077-1350): "We propose to amend the Direct Loan regulations to eliminate interest capitalization in instances where it is not required by statute." Regulations.Gov, https://www.regulations.gov/document/ED-2021-OPE-0077-1350.

6.      For the reasons detailed in this Complaint, the capitalization that Plaintiff suffered was not required by statute and DOE's *own* Regulations. Accordingly, it should be reversed, set aside, and vacated for Plaintiff and all borrowers pursuant to APA 5 U.S.C. §§ 533, 706.

7.      Plaintiff was enrolled in an income-based repayment plan ("IBR plan") in 2017. A borrower qualifies for an IBR plan when they are experiencing a partial financial hardship ("PFH"). Once per year, a borrower is required to submit an IBR application ("recertification") that grants DOE access to a borrower's Internal Revenue Service ("IRS") records, which discloses a borrower's annualized gross income ("AGI"). This byzantine procedure purportedly allows DOE to verify whether a borrower is still experiencing a PFH and therefore still qualifies for an IBR plan.

8.      <u>The annual, arbitrary, paperwork-submission deadline for IBR borrowers under DOE Regulations is completely unnecessary.</u> There is a very simple and efficient alternative. Plaintiff could easily provide FedLoan a **<u>one-time, multi-year consent</u>** to access his IRS records until his loans are paid off or discharged. DOE discontinued the multi-year consent around 2012 for reasons completely unknown and not addressed in DOE's rulemaking. One could easily conclude that DOE did away with multi-year consent in a scheme to capitalize interest on borrowers like Plaintiff who

1154.378 4874-4868-6924.1

1  miss an annual recertification.

2  9.      With a multi-year consent in place, borrowers wouldn't have to submit new paperwork

3  every single year, and loan services wouldn't have to process new paperwork every year. It's a

4  win-win for everyone.

5  10.     **Of course, Plaintiff would gladly grant a multi-year consent considering Plaintiff has**

6  **allowed DOE unfettered access to his bank account for the past 12 years!** It's quite telling how

7  DOE doesn't require annual recertification to access to a borrower's bank account. They are

8  completely fine with always being able to withdraw money from a borrower's bank account. So

9  why wouldn't they want to make it easier for themselves to check Plaintiff's annual AGI? DOE did

10  away with multi-year consent, because they wanted to do more work? Surely not. They did it, so

11  borrowers fall into the same trap Plaintiff did.

12  11.     Why would DOE want to make more work for loan servicers and borrowers? Again, one

13  could easily conclude that DOE wants to capitalize interest on borrowers to increase DOE's bottom

14  line.

15  12.     **DOE's own data shows that approximately 60% of borrowers miss recertification**. D.

16  Herbst, "Liquidity and Insurance in Student-Loan Contracts: The Effects of Income-Driven

17  Repayment on Borrower Outcomes" (2020), https://drive.google.com/file/d/1A-

18  gq_LIqffY6r2gDTcUK9-Y3ZV8Go6SU/view.

19  13.     In 2012, a "commenter stated that until recently, an IRS consent process allowed ICR and

20  IBR borrowers to provide a multi-year consent to allow the Department to check their [borrowers]

21  income, effectively preventing them from missing the annual income documentation deadline

22  date." 77 Fed. Reg. 66105 (Nov. 1, 2012). DOE did not address this comment in their rulemaking.

23  DOE stated: "Finally, the commenter's recommendations would present significant operational

24  challenges for loan holders, and servicers, including the Department." *Id.* However, this was not in

25  response to the comment. DOE was responding to the commenter's suggestion to limit capitalized

26  interest to only the past year, because DOE goes on to say that "the systems of most loan holders

27  and servicers are currently designed to automatically capitalize all unpaid interest . . . ." *Id.* at

28  66105-66106. How hard would it be to change the system? Surely, it's not an insurmountable task

1  to adjust the amount of interest capitalized.

2  14.    <u>In short, DOE's annual, arbitrary, and unnecessary paperwork-submission deadline for IBR</u>

3  <u>borrowers under DOE Regulations in lieu of a multi-year consent is a concerted</u> **scheme/trap**

4  **(DOE's Capitalization Scheme)** <u>designed for borrowers to fail, because when deadlines are</u>

5  <u>missed, they can capitalize unpaid interest.</u>

6  15.    Furthermore, the penalty for missing a deadline—**that can easily be remedied**—is extreme

7  and disproportionate. DOE capitalizes ALL interest even for the years when the borrower met the

8  deadline. Accordingly, it's an extremely disproportionate and unduly harsh penalty that has been

9  brought to DOE's attention by several consumer advocacy groups over the years. In response, DOE

10  said it's not a "penalty"—it's a "result." 77 Fed. Reg. 66105 (Nov. 1, 2012)—such cruel semantics.

11  16.    To make matters worse, if FedLoan had withdrawn the $1,887.61 the day after Plaintiff's

12  deadline, then he would have likely noticed and been able to complete his 2017 IBR application

13  within the 10-day grace period per 34 CFR § 685.221 (e)(7) and (8), and interest would not have

14  capitalized. Instead, DOE inexplicably waited approximately 56 days before withdrawing the

15  money, thus all but ensuring he would miss the grace period.

16  17.    DOE states that notifications per CFR 685.221(e) and the 10-day grace period are sufficient

17  safeguards to help borrowers avoid any adverse consequences of missing recertification. 77 Fed.

18  Reg. 66102 (Nov. 1, 2012). As stated, DOE's own data shows that **approximately 60% of**

19  **borrowers miss recertification**. **HOW CAN DOE STAND BY A SYSTEM THAT FAILS**

20  **OVER HALF OF BORROWERS?** Clearly the system is broken for borrowers. When a deadline

21  is missed, DOE doesn't even call, mail, or email the borrower to notify them, so what benefit is the

22  10-day grace period? Why doesn't a servicer contact an emergency contact of the borrower, send

23  certified mail, call, email again, or send a letter when the deadline is missed? DOE is clearly not

24  interested in making recertification easy.

25  18.    One example of how the DOE does not make things clear, simple, easy, and logical for

26  borrowers was their inexplicable refusal to include a borrower's annual deadline date in the initial

27  notification required under §§ 682.25(e)(2), 685.209(a)5)(ii), and 685.221(e)(2) as suggested to

28  them. 77 Fed. Reg. 66102 (Nov. 1, 2012). DOE stated that the notification "would not be effective

1  or helpful to most borrowers, as this notification is sent many months in advance of the annual

2  deadline date." *Id.* Who doesn't like to plan ahead? Since when is more information not better?

3  What data is DOE relying upon in making this determination? Why would DOE want a borrower to

4  engage in high-stakes guesswork? Taxes are due every April and every American knows that. DOE

5  wants borrowers to hit a selectively disclosed target, designed to be missed.

6  19.    DOE provided no meaningful notice of Plaintiff's approaching and ultimately missed

7  deadline. FedLoan said they mailed a letter reminding him of his deadline. He has no record of

8  receiving it. They said they sent an email. He has no record of it. They have not sent proof of the

9  email in their sent folder. He asked why they couldn't have called, sent another letter (e.g., maybe

10  in a bright envelope, maybe certified, etc.), one or two more emails, etc. They said they did not

11  have to, so they didn't. He asked FedLoan for a Communication Log for his account proving the

12  email was sent. He has not received it. They sent a copy of the letter they said they mailed, but

13  without a tracking number or his signature upon receipt there is no guarantee they did. **Again, all**

14  **of this is completely unnecessary if they just maintained the multi-year consent**.

15  20.    The letter DOE claims to have mailed, dated February 22, 2017 and notifying Plaintiff of

16  his upcoming deadline per 34 CFR § 685.221(e)(3) could have been lost in the mail, never sent,

17  sent to the wrong address, etc. If they want to prove written actual notice, they should send the

18  letter via certified mail. FedLoan stated that since Plaintiff opted into electronic correspondence

19  then he received notice when they emailed him; however as stated above, FedLoan did not provide

20  proof any email was sent to him in accordance with 34 CFR § 685.221(e)(3). They should send

21  emails with receipt notification if they want to achieve some semblance of actual notice and

22  service.

23  21.    Servicers should act as fiduciaries—not adversaries—and notify borrowers of payment

24  plans that may benefit them (e.g., lower monthly payments, more generous terms, etc.). As stated,

25  FedLoan withdrew $1,887.61 from his bank account. Plaintiff's monthly payment around this time

26  was closer to $600.00 per month, so this withdrawal was very noticeable. By DOE's illegal and

27  flawed logic (detailed below), they think that a missed deadline means a borrower has "elected" or

28  "chosen" to enter a standard payment plan not based on their income. Upon learning of the

1  withdrawal, Plaintiff called FedLoan and got back into an IBR plan, but the damage had already

2  been done. When he called FedLoan they did not notify him at that time of new and possibly better

3  repayment options available to him (e.g., Revised Pay As You Earn (REPAYE) Plan, etc.). He

4  went back into the plan he was in before, but then did additional research after being upset about

5  the capitalization and only then learned of the REPAYE plan. Since the damage had been done, he

6  changed to the REPAYE plan in July 2019, so he would have a lower monthly payment. FedLoan

7  capitalized interest <u>again</u> when he changed plans.

8  22.  <u>Interest should not be capitalized when borrowers change payment plans from one that is</u>

9  <u>based upon a PFH to another that is also based upon a PFH</u>. It's illogical for borrowers to be

10  punished for availing themselves of another payment plan they qualify for and clearly need help

11  from based upon a PFH.

12  23.  DOE's Regulations ignore the reality that recertification deadlines are missed by mistake

13  and ignored their own data that shows that **approximately 60% of borrowers miss recertification**

14  **deadlines**. If a system is failing over half of borrowers, clearly something is wrong. <u>Again, this is</u>

15  <u>something that a very simple multi-year consent would remedy</u>.

16  24.  Furthermore, How many borrowers who miss a recertification deadline later qualify for

17  IBR? Many, if not all, presumably. Plaintiff certainly did. It stands to reason that, just like Plaintiff,

18  borrowers are not missing recertification in an attempt to hide an increase in AGI.

19  25.  DOE may also call borrowers and ask them for info over the phone or remind them of the

20  deadline once it is missed and the start of the 10-day grace period per 73 Fed. Reg. 63251 (Oct. 23,

21  2008); 20 U.S.C. 1098e (c). They do not do this. How many times has the DOE used other

22  documentation provided by the borrower to verify income when the borrower's AGI is not

23  available as allowed in 73 Fed. Reg. 63251 (Oct. 23, 2008); 20 U.S.C. 1098e (c)? Likely never.

24  <b><u>PLAINTIFF</u></b>

25  26.  Plaintiff is an individual who resides in Orange County, California and has had federal

26  student loans dating back to 2007 and has been in repayment since 2010.

27  <b><u>DEFENDANTS</u></b>

28  27.  Defendant DOE is a federal agency headquartered in the District of Columbia. Its principal

1   office is located at 400 Maryland Avenue S.W., Washington, D.C. 20202.

2   28.     Defendant Miguel Cardona, in his official capacity as Secretary of the Department of

3   Education, is responsible for administering the federal student loan program. Secretary Cardona

4   maintains an office at the Department's headquarters, located at 400 Maryland Avenue S.W.,

5   Washington, D.C. 20202.

6                                    **JURISDICTION AND VENUE**

7   29.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331,

8   because this action arises under federal law. The relief requested herein is authorized by the APA,

9   5 U.S.C. §§ 533, 702, 706, and the Court's authority to enjoin federal agencies and officers from

10   violating federal law.

11   30.     Defendants' actions give rise to an actual case or controversy within the meaning of Article

12   III of the U.S. Constitution.

13   31.     Plaintiff has suffered actual injury, and continues to, and has standing to assert claims as set

14   forth below:

15          a.      Interest was unlawfully capitalized on Plaintiff's student loans under 20 U.S.C.

16   1098e(b) -(c) **and** DOE's own Regulations, 34 CFR § 685.221;

17          b.      Increased unlawful interest continues to accrue on Plaintiff's student loans;

18          c.      These injuries would be redressed by a favorable decision by this Court, which

19   would invalidate DOE's Regulations pending a public rulemaking process and order that DOE

20   promulgate regulations in accordance with the enabling statute. This could ultimately lead DOE to

21   abandon, modify, or retroactively invalidate the Regulations or the underlying policy through a

22   public rulemaking process that includes input from affected student borrowers. Also, an order

23   requiring DOE to issue a Memorandum of Understanding ("MOU") would aid in the oversight of

24   the student loan industry by servicers in the manner required by law.

25   32.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and

26   28 U.S.C. § 1391(e)(1), because it is Plaintiff's residence and a substantial part of the events or

27   omissions giving rise to Plaintiff's claims occurred here.

28                                **THE ADMINISTRATIVE PROCEDURE ACT**

1154.378 4874-4868-6924.1

33.     The APA allows a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action" to seek judicial review of that action. 5 U.S.C. § 702. Relevant here, under the APA, a reviewing court may "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), and "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A) or "without observance of procedure required by law," id. § 706(2)(D). Also relevant here, under the APA, a reviewing court may set aside and vacate an agency action that fails to include a statement of basis and purpose. 5 U.S.C. § 533.

34.     This case is properly brought under the standards set forth in the APA. See 5 U.S.C. § 701(a).

35.     Defendants' actions constitute final agency actions and no further exhaustion of remedies is required.

36.     In the alternative, exhaustion is not required because it would be futile.

## ALLEGATIONS

### Count One – As to All Defendants

### Capitalization of Interest on IBR Borrowers Who Miss

### an Income-Recertification Deadline Is Not in Accordance with Law. APA 5 U.S.C. §

### 706(2)(A)

37.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

38.     Under the APA, a reviewing court may set aside and vacate agency action not in accordance with law. 5 U.S.C. § 706(2)(A).

39.     Substantive agency regulations have the force and effect of law and agency actions inconsistent with regulations may be vacated as not in accordance with law. 5 U.S.C. § 706(2)(A).

40.     For the reasons detailed below, capitalization of interest on IBR borrowers who miss an Income-Recertification Deadline is not in accordance with 20 U.S.C. 1098e(b) -(c) **and** DOE's own Regulations (34 CFR § 685.221).

41.     To begin, the "Eligibility Determinations" section for IBR in DOE's enabling statute does

1   not require interest to be capitalized when a borrower misses an annual recertification deadline.

2   20 U.S.C. 1098e(c). The section states: "The Secretary shall establish procedures for annually

3   determining the borrower's eligibility for income-based repayment, including verification of a

4   borrower's annual income . . . ." *Id.* Obviously the best way to do this would be for DOE to offer

5   borrowers **multi-year consents**.

6   42.     The statute states that for IBR borrowers, "any interest . . . shall . . . be capitalized . . . at the

7   time the borrower—(I) **ends the election** to make income-based repayment." 20 U.S.C. 1098e

8   (b)(3)(B)(i)(I) & (ii)(I) (emphasis added).

9   43.     It defies logic for DOE to conclude that accidentally missing an annual recertification

10   deadline is an "election" to end IBR. One does not forget to cast a vote and it defaults to a

11   candidate of the government's choosing.

12   44.     It is well established that an **election** is something purposeful, something done by choice:

13   "the right, power, or privilege of making a choice." *Merriam Webster*, https://www.merriam-

14   webster.com/dictionary/election. Plaintiff did not elect to end IBR and enter a standard repayment

15   plan when he accidentally missed his deadline.

16   45.     When DOE promulgated the current regulations they stated: "Under the current and

17   proposed regulations, a borrower who fails to provide the annual income information required by

18   the Secretary is **considered** to no longer have a PFH, and unpaid interest will be capitalized." 77

19   Fed. Reg. 66105 (Nov. 1, 2012). (emphasis added). Incredibly, DOE admits that missing the

20   deadline results in a default conclusion, or "consideration,"; however, they offer no rationale for

21   this. It is not supported by any facts like borrowers going on the lamb and making millions and

22   never telling Congress about their updated AGI. Furthermore, it's a wholly implausible, illogical,

23   and illegal consideration (conclusion) that directly contravenes Congress's intent in the enabling

24   statute when Congress clearly stated interest should be capitalized when a borrower "**ends the**

25   **election** to make income-based repayment or no longer" 20 U.S.C. 1098e (b)(3)(B)(i)(I) & (ii)(I).

26   46.     By capitalizing interest on IBR borrowers who miss a recertification deadline, DOE has

27   blatantly ignored Congress's plain meaning and intent when Congress passed 20 U.S.C.

28   1098e(b)(3)(B)(i)(I), (ii)(I). The statute's clear intention is to only capitalize interest on a borrower

1   who "**ends the election** to make income-based repayment." 20 U.S.C. 1098e (b)(3)(B)(i)(I) &

2   (ii)(I), because that borrower is presumably making more money and can now afford to pay more

3   to hopefully attack the principal of the loan, etc. It defies logic for DOE to conclude that a borrower

4   no longer suffers a PFH merely because a deadline was missed. If anything, the opposite could be

5   inferred.

6   47.     It is a cardinal principle of statutory interpretation that the court must first look to the plain

7   meaning of the statutory text. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)

8   ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute

9   what it says there"). Statutory analysis begins with the plain meaning of a statute. *Nat. Res. Def.*

10   *Council, Inc. v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001) (citing *U.S. v. Dauray*, 215 F.3d 257,

11   260) (2d Cir. 2000). If the plain meaning of a statute is susceptible to two or more reasonable

12   meanings, *i.e.*, if it is ambiguous, then a court may resort to the canons of statutory construction.

13   *See Dauray*, 215 F.3d. at 262. There is no need to do so in the instant case. There is no ambiguity.

14   Congress's meaning is clear. So clear in fact, that DOE, the executive agency tasked with

15   administering the statute, perfectly understood the meaning of the word "election" when drafting

16   their Regulations and chose the word "choose", which is a totally appropriate and acceptable

17   synonym for "election".

18   48.     To wit, 34 CFR § 685.221(b)(4) states: "Accrued interest is capitalized at the time a

19   borrower **chooses** to leave the income-based repayment plan or no longer has a partial financial

20   hardship." "Choose": "to select freely and after consideration." *Merriam Webster*,

21   https://www.merriam-webster.com/dictionary/choose. Clearly, accidentally missing a

22   recertification window is not a *choice* to leave IBR. To infer an omission is a *choice* is illogical. It's

23   indisputable that Plaintiff did not *choose* or *elect* leave IBR, because to do so would be a disastrous

24   financial decision. The analysis can end here. There is no need to delve into the canons of statutory

25   construction. In summary, **DOE's Capitalization Scheme** is not even in accordance with their own

26   Regulations.

27   49.     Plaintiff repeatedly asked FedLoan to reverse the capitalization. FedLoan stated that DOE

28   Regulation 34 CFR § 685.221(e)(3)(ii) supported the capitalization of interest. He explained to

1154.378 4874-4868-6924.1

1  them that was not true for the reasons above and below.

2  50.     First, the DOE Regulations provide the Secretary wide latitude in annual recertification of

3  IBR. A borrower must provide evidence of AGI "acceptable to the secretary." 34 CFR

4  § 685.221(e)(1)(i). FedLoan could have relied upon the IBR application income in the previous

5  year to calculate his payment. In fact, in 2018 FedLoan used his 2016 income information to

6  calculate his IBR payment even though he provided them with his updated 2017 income

7  information. In short, Plaintiff was punished in 2017 for not providing information that DOE didn't

8  even need.

9  51.     Second, "[i]f the borrower's AGI is not available" the borrower can provide **other**

10  documentation to verify income." 34 CFR § 685.221(e)(1)(ii) (emphasis added). Perhaps they

11  could have called him to discuss it over the phone, etc. Does FedLoan ever consider "other

12  documentation"? Can they cite one example? Highly doubtful.

13  52.     Third, 34 CFR § 685.221(e)(3)(ii) states: "The consequences if the Secretary does not

14  receive the information within 10 days following the annual deadline specified in the notice,

15  including the borrower's new monthly payment amount as determined under paragraph (d)(1) of

16  this section, the effective date for the recalculated monthly payment amount, and the fact that

17  unpaid accrued interest will be capitalized at the end of the borrower's current annual payment

18  period in accordance with paragraph (b)(4) of this section."

19  53.     34 CFR § 685.221(d)(1) states: "If a borrower no longer has a partial financial

20  hardship . . . ." The analysis can stop here. It is undisputed that he still suffered a PFH, so he does

21  not qualify as a borrower under paragraph (d)(1).

22  54.     34 CFR § 685.221(b)(4) states: "Accrued interest is capitalized at the time a borrower

23  **chooses** to leave the income-based repayment plan or no longer has a partial financial hardship."

24  (emphasis added). Plaintiff did not meet and still does not meet either criterion. Accidentally

25  missing a recertification window is not a *choice*. He did not "select freely" to leave IBR.

26  55.     Moreover, DOE's own Regulations continually support the idea that leaving an IBR plan

27  has to be a conscious decision and not something done by default despite their painfully flawed

28  logic detailed above in 77 Fed. Reg. 66105 (Nov. 1, 2012). For example, 34 CFR

11

1154.378 4874-4868-6924.1

1 § 685.221(d)(2)(i) states "If a borrower **no longer wishes** to pay under the income-based

2 repayment plan, the borrower must pay under the standard repayment plan . . . ." (emphasis added).

3 "Wishes", "chooses", etc. There is a theme here: volition.

4 56.    In reviewing an agency's construction of a statute, the court must reject those constructions

5 that are so contrary to clear congressional intent or frustrate the policy that Congress sought to

6 implement. *See Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-844 (1984).

7 57.    In summary, DOE's current Regulations that allow them to illegally characterize a mistake

8 as an "election" and choice, and then capitalize interest on IBR borrowers is a **Scheme/Trap** that is

9 not in accordance with law (20 U.S.C. 1098e(b) - (c)) and is an agency action inconsistent with

10 DOE's own regulations (34 CFR § 685.221) and must be vacated as not in accordance with law per

11 APA 5 U.S.C. § 706(2)(A).

12 58.    Capitalization of interest on IBR borrowers who missed or miss a recertification deadline

13 must be reversed, set aside, and vacated under the APA as not in accordance with law.

14                          **Count Two – As to All Defendants**

15                   **Capitalization of Interest on IBR Borrowers Who Miss**

16   **an Income-Recertification Deadline Is Arbitrary and Capricious. APA 5 U.S.C. § 706(2)(A)**

17 59.    Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

18 forth herein.

19 60.    The APA empowers this Court to set aside agency action that is arbitrary, capricious, or

20 contrary to law. 5 U.S.C. § 706(2)(A). It is arbitrary and capricious when an agency fails to provide

21 a reasoned explanation for its action.

22 61.    If an agency changes its prior position, it must display awareness that it is changing

23 position. An agency may not disregard applicable rules or depart from a prior policy *sub silentio*. A

24 reasoned explanation is needed for disregarding facts and circumstances that underlay or were

25 engendered by the prior rules or policies.

26 62.    As stated above, **DOE's Capitalization Scheme** is not in accordance with their own

27 Regulations. DOE has given no reasoned explanation for capitalizing interest on IBR borrowers

28 who miss a recertification deadline. Once can only guess what their rationale is. Are they

1  presuming that borrowers who miss deadlines are doing so to hide an increase in AGI? If so,

2  where's the data to support this? DOE must articulate a rational connection between the facts found

3  and the conclusions made. *See Latino Issues Forum v. U.S.*, 558 F.3d 936, 941 (9th Cir. 2009).

4  When a borrower misses a deadline, the presumption should be that it's an honest mistake, and a

5  mistake is not an "election" or "choice." Accordingly, **DOE's Capitalization Scheme** is a "clear

6  error of judgment" and not "a consideration of the relevant factors." *See Marsh v. Oregon Natural*

7  *Res. Council*, 490 U.S. 360, 378 (1989)

8  63.     Capitalization in this instance is arbitrary and capricious because DOE relied on factors that

9  Congress has not intended it to consider [only their profit], entirely failed to consider an important

10  aspect of the problem [60% of borrowers miss the deadline], offered an explanation for its decision

11  that runs counter to the evidence before the agency [no explanation given], or is so implausible that

12  it could not be ascribed to a difference in view or the product of agency expertise [DOE is

13  contradicting Congress's plain meaning and intent in the enabling statute]. *See Greater Yellowstone*

14  *Coalition v. Lewis*, 628 F.3d 1143, 1148 (9th Cir. 2010).

15  64.     A court may refuse to defer to an agency's interpretation of a statute that raises serious

16  constitutional concerns. *See Diouf v. Napolitano*, 634 F.3d 1081, 1090 (9th Cir. 2011) (explaining

17  court will not defer to agency interpretation if it raises "grave constitutional doubts"); *Ma v.*

18  *Ashcroft*, 257 F.3d 1095, 1105 n.15 (9th Cir. 2001) (noting *Chevron* deference is not owed where a

19  substantial constitutional question is raised by an agency's interpretation of a statute it is authorized

20  to construe); *Williams v. Babbitt*, 115 F.3d 657, 661-62 (9th Cir. 1997).

21  65.     Capitalization of interest on IBR borrowers who missed or miss a recertification deadline

22  must be reversed, set aside, and vacated as arbitrary and capricious.

23                    **Count Three – As to All Defendants**

24                    **Capitalization of Interest on IBR Borrowers Who Miss**

25  **an Income-Recertification Deadline Is an Abuse of Discretion Per APA 5 U.S.C. § 706(2)(A)**

26  66.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

27  forth herein.

28  67.     The APA empowers this Court to set aside agency action that is an abuse of discretion. 5

1154.378 4874-4868-6924.1

1   U.S.C. § 706(2)(A). An action is deemed as "committed to agency discretion by law" when the

2   authorizing statute is "drawn in such broad terms that in a given case there is no law to apply."

3   U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (citing the legislative history of

4   the APA: S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)).

5   68.     Here, the statute is not drawn in such broad terms. The statute's clear intention is to <u>only</u>

6   capitalize interest on a borrower who "**ends the election** to make income-based repayment." 20

7   U.S.C. 1098e (b)(3)(B)(i)(I) & (ii)(I), because that borrower is presumably making more money

8   (i.e., no longer suffering a PFH) and can now afford to pay more.

9   69.     Here, Congress has clearly "indicated an intent to circumscribe agency . . . discretion, and

10  has provided meaningful standards for defining the limits of that discretion." *Heckler*, 470 U.S. at

11  821-822.

12  70.     Capitalization of interest on IBR borrowers who missed or miss a recertification deadline

13  must be reversed, set aside, and vacated as an abuse of discretion.

**Count Four – As to All Defendants**

**DOE's Discontinuance of Multi-Year Consent Is Procedurally Inadequate**

**Rulemaking, 5 U.S.C. §§ 533, 706**

17  71.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

18  forth herein.

19  72.     The APA requires a statement of basis and purposes for final agency action. 5 U.S.C.

20  § 553(c).

21  73.     DOE has not identified the major policy issues or rationale for requiring an annual

22  paperwork submission deadline for IBR borrowers to recertify their IBR plans in lieu of a multi-

23  year consent that would avoid paperwork for all interested parties.

24  74.     In 2012, a "commenter stated that until recently, an IRS consent process allowed ICR and

25  IBR borrowers to provide a multi-year consent to allow the Department to check their [borrowers]

26  income, effectively preventing them from missing the annual income documentation deadline

27  date." 77 Fed. Reg. 66105 (Nov. 1, 2012). DOE ambiguously responded by stating: "Finally, the

28  commenter's recommendations would present significant operational challenges for loan holders,

and servicers, including the Department." *Id.* However, it's not clear if DOE is even responded to the commenter's suggestion of a multi-year consent whatsoever. It's more likely it is a response to the commenter's suggestion to limit capitalized interest to only the past year, because DOE goes on to say that "the systems of most loan holders and servicers are currently designed to automatically capitalize all unpaid interest . . . ." *Id.* At 66105-66106.

75.     In summary, DOE fails to state any explanation for the annual paperwork submission deadline for IBR borrowers to recertify their IBR plans in lieu of a multi-year consent, so it is subject to vacatur.

76.     The annual paperwork submission deadline for IBR borrowers to recertify their IBR plans in lieu of a multi-year consent must be reversed, set aside, and vacated for failing to include a statement of basis and purpose.

**Count Five – As to All Defendants**

**DOE's Discontinuance of Multi-Year Consent Is Arbitrary and Capricious Rulemaking Per**

**APA 5 U.S.C. § 706(2)(A)**

77.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

78.     The APA empowers this Court to set aside agency action that is arbitrary, capricious, or contrary to law. 5 U.S.C. § 706(2)(A). It is arbitrary and capricious when an agency fails to provide a reasoned explanation for its action.

79.     If an agency changes its prior position, it must display awareness that it is changing position. An agency may not disregard applicable rules or depart from a prior policy *sub silentio*. A reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior rules or policies.

80.     DOE has given no reasoned explanation for discontinuing multi-year consent and instead opting for an archaic, unnecessary, annual paperwork-submission deadline.

81.     DOE's discontinuance of multi-year consent and instead opting for an annual paperwork-submission deadline for IBR borrowers to recertify their IBR plans must be reversed, set aside, and vacated as arbitrary and capricious.

1154.378 4874-4868-6924.1

**Count Six – As to All Defendants**

**Capitalization of Interest on Borrowers Who Change from a Payment Plan Based**

**Upon a PFH to Another Based Upon a PFH Is Procedurally Inadequate Rulemaking,**

**5 U.S.C. §§ 533, 706**

82.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

83.     The APA requires a statement of basis and purposes for final agency action. 5 U.S.C. § 553(c).

84.     DOE has not identified the major policy issues for capitalizing interest on borrowers who change from one plan based upon a PFH to another plan based upon a PFH.

85.     Please recall that when FedLoan withdrew $1,887.61 from his bank account he called them and got back into his previous IBR Plan, but the damage had already been done (interest capitalized). When he called FedLoan they did not advise him at that time of new and possibly better repayment options available to him (e.g., Revised Pay As You Earn (REPAYE) Plan, etc.). He did additional research after being very upset about the capitalization and learned of the REPAYE plan. Since the damage had been done already, he changed to the REPAYE plan in July 2019, so he would have a lower monthly payment and possibly more interest forgiven at the end of the loan. FedLoan capitalized interest again when he changed plans. **<u>Interest should not be capitalized when borrowers change payment plans that are both based upon a PFH.</u>** Why should borrowers be punished for availing themselves of another payment plan they qualify for and clearly need the help from?

86.     In summary, DOE fails to state any explanation for capitalizing interest on borrowers who change from one PFH Plan to another PFH Plan, so it is subject to vacatur.

87.     Capitalizing interest on borrowers who change from a payment plan based upon a PFH to another plan based upon a PFH must be reversed, set aside, and vacated for failing to include a statement of basis and purpose.

**Count Seven – As to All Defendants**

**Capitalization of Interest on Borrowers Who Change from a Payment Plan Based Upon a**

Case No.  ****

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1154.378 4874-4868-6924.1

**PFH to Another Based Upon a PFH Is Arbitrary and Capricious Per APA 5 U.S.C. §**

**706(2)(A)**

88.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

89.     The APA empowers this Court to set aside agency action that is arbitrary, capricious, or contrary to law. 5 U.S.C. § 706(2)(A). It is arbitrary and capricious when an agency fails to provide a reasoned explanation for its action.

90.     DOE has given no reasoned explanation for capitalizing interest on borrowers who change from one PFH Plan to another PFH Plan.

91.     Congress's clear intention is to <u>only</u> capitalize interest on a borrower who "**ends the election** to make income-based repayment.**" 20 U.S.C. 1098e (b)(3)(B)(i)(I) & (ii)(I), because that borrower is presumably making more money (i.e., no longer suffering a PFH) and can now afford to pay more. It makes no sense and frustrates Congress's intent to punish a borrower who changes from a payment plan based upon a PFH to another plan based upon a PFH.

92.     Capitalization of interest on borrowers who change from a payment plan based upon a PFH to another plan based upon a PFH must be reversed, set aside, and vacated as arbitrary and capricious.

**Count Eight– As to All Defendants**

**Capitalization of Interest on IBR Borrowers Who Change from a Payment Plan Based**

**Upon a PFH to Another Based Upon a PFH Is Not in Accordance with Law. APA 5**

**U.S.C. § 706(2)(A)**

93.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

94.     Under the APA, a reviewing court may set aside and vacate agency action not in accordance with law. 5 U.S.C. § 706(2)(A).

95.     Substantive agency regulations have the force and effect of law and agency actions inconsistent with regulations may be vacated as not in accordance with law. 5 U.S.C. § 706(2)(A).

96.     Congress's clear intention is to <u>only</u> capitalize interest on a borrower who "**ends the**

17

1154.378 4874-4868-6924.1

1  **election** to make income-based repayment." 20 U.S.C. 1098e (b)(3)(B)(i)(I) & (ii)(I), because that

2  borrower is presumably making more money (i.e., no longer suffering a PFH) and can now afford

3  to pay more. It makes no sense and frustrates Congress's intent to punish a borrower who changes

4  from a payment plan based upon a PFH to another plan based upon a PFH.

5  97.     Capitalization of interest on borrowers who change from a payment plan based upon a PFH

6  to another plan based upon a PFH must be reversed, set aside, and vacated under the APA as not in

7  accordance with law.

8                      **Count Nine – As to All Defendants**

9                    **Capitalization of Interest on IBR Borrowers Who Miss**

10  **an Income-Recertification Deadline or Who Change from a PFH Plan to Another PFH Plan**

11                **Is an Violates the Fifth Amendment of the U.S. Constitution**

12  98.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set

13  forth herein.

14  99.     The APA empowers this Court to set aside agency action that is an abuse of discretion. 5

15  U.S.C. § 706(2)(A). An action is deemed as "committed to agency discretion by law" when the

16  authorizing statute is "drawn in such broad terms that in a given case there is no law to apply."

17  U.S.C. § 701(a)(2); *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (citing the legislative history of

18  the APA: S.Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)).

19  100.    Here, the statute is not drawn in such broad terms. The statute's clear intention is to <u>only</u>

20  capitalize interest on a borrower who "**ends the election** to make income-based repayment." 20

21  U.S.C. 1098e (b)(3)(B)(i)(I) & (ii)(I), because that borrower is presumably making more money

22  (i.e., no longer suffering a PFH) and can now afford to pay more.

23  101.    Here, Congress has clearly "indicated an intent to circumscribe agency . . . discretion, and

24  has provided meaningful standards for defining the limits of that discretion." *Heckler*, 470 U.S. at

25  821-822.

26  102.    Capitalization of interest on borrowers who change from a payment plan based upon a PFH

27  to another plan based upon a PFH must be reversed, set aside, and vacated under the APA as an

28  abuse of discretion.

**Count Ten – As to All Defendants**

**Capitalization of Interest on IBR Borrowers Who Miss**

**an Income-Recertification Deadline Violates the Procedural Due Process Clause of the Fifth**

**Amendment of the U.S. Constitution**

103.     Plaintiff repeats and incorporates by reference each of the forgoing allegations as if fully set forth herein.

104.     The Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law." These words have as their central promise an assurance that all levels of American government must operate within the law ("legality") and provide fair procedures.

105.     "The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'" *Mathews v. Eldridge*, 424 U.S. 319, 348-349 (1976) (citing *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. at 341 U. S. 171-172 (Frankfurter, J., concurring).

106.     The U.S. Supreme Court in *Mathews* attempted to define how judges should ask about constitutionally required procedures. The Court said three factors had to be analyzed: First, the private interest that will be affected by the official action; Second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and Third, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

107.     Before beginning the *Mathews* analysis, it's important to remember none of this is necessary if DOE simply never eliminated multi-year consent.

108.     First, as result of missing a needless paperwork-submission deadline, one time, FedLoan **capitalized $58,153.33** in interest onto the principal of Plaintiff's student loans—**ballooning the principal balance from $163,640.33 to $221,793.66**—at 7.63% interest that results in an additional $4,437.09 in interest each year. This is a significant amount of money, and it is happening to approximately 60% of borrowers per DOE's own data. Few things could be more

1154.378 4874-4868-6924.1

1  critical or of a greater private interest than thousands of dollars to thousands of borrowers who have

2  documented a PFH?

3  109.    Second, the capitalizing of interest is an erroneous deprivation and illogical default

4  conclusion as demonstrated by the fact that Plaintiff still qualified for his IBR plan even after he

5  was punished by interest capitalization. The probable value of additional or substitute procedural

6  safeguards such as ensuring constructive notice of the upcoming deadline via multiple emails with

7  read receipts, brightly colored envelopes, and one or two simple phone calls would be very high,

8  considering Plaintiff is probably like the 60% of borrowers who miss the deadline in the first place

9  due to lack of actual notice. Plaintiff did not intentionally miss the deadline to hide an increase in

10 AGI. Therefore, it is very probably there will be a concrete improvement in borrowers meeting the

11 deadline if DOE adds additional procedural requirements to help increase the likelihood borrowers

12 are actually notified of the deadline. Moreover, additional procedural requirements are not

13 complicated.

14 110.    The *Mathews* Court attached importance to the government's claims for efficiency. DOE is

15 completely precluded from arguing efficiency, because if it was really a concern, they would have

16 never eliminated multi-year consent. If DOE is going to argue that resources are limited, and they

17 cannot send multiple emails, colored envelopes, place a few phone calls, etc. then they should have

18 never eliminated multi-year consent in the first place.

19 111.    Third, DOE is completely precluded from arguing its interests in the function involved and

20 the fiscal and administrative burden of the additional procedural requirements would entail,

21 because if any of it was really a concern, they would have never eliminated multi-year consent.

22 112.    While there is no definitive list of the "required procedures" that due process requires,

23 Judge Henry Friendly generated a list that remains highly influential, as to both content and relative

24 priority (see below). This is not a list of procedures which are required to prove due process, but

25 rather a list of the kinds of procedures that might be claimed in a "due process" argument, roughly

26 in order of their perceived importance. Again, all of these procedures would be rendered moot if

27 DOE simply never eliminated multi-year consent. Plaintiff clearly needed "Notice", which is the

28 second most important procedural requirement. DOE did not provide it to Plaintiff, and the current

1  practice of one letter and one or two emails does not constitute adequate procedural safeguards as

2  required by due process.

3           a.   An unbiased tribunal.

4           **b.   Notice of the proposed action and the grounds asserted for it.**

5           c.   Opportunity to present reasons why the proposed action should not be taken.

6           d.   The right to present evidence, including the right to call witnesses.

7           e.   The right to know opposing evidence.

8           f.   The right to cross-examine adverse witnesses.

9           g.   A decision based exclusively on the evidence presented.

10          h.   Opportunity to be represented by counsel.

11          i.   Requirement that the tribunal prepare a record of the evidence presented.

12          j.   Requirement that the tribunal prepare written findings of fact and reasons for its

13               decision.

14  113.   In summary, Plaintiff was denied fair procedures as required by the Constitution. Therefore,

15  capitalization of interest on IBR borrowers who missed or miss a recertification deadline must be

16  reversed, set aside, and vacated as violating the Due Process Clause of the Fifth Amendment of the

17  U.S. Constitution.

18                                    **PRAYER FOR RELIEF**

19  114.   WHEREFORE, Plaintiff prays that this Court:

20  115.   Declare that capitalization of interest on IBR borrowers who missed or miss a

21  recertification deadline violates the APA.

22  116.   Order that capitalization of interest on IBR borrowers who missed or miss a recertification

23  deadline is reversed, set aside, and vacated.

24  117.   Declare that the annual paperwork submission deadline for IBR borrowers to recertify their

25  IBR plans in lieu of a multi-year consent violates the APA.

26  118.   Order that the annual paperwork submission deadline for IBR borrowers to recertify their

27  IBR plans in lieu of a multi-year consent is reversed, set aside, and vacated.

28  119.   Declare that capitalizing interest on borrowers who change or have changed from a payment

1  plan based upon a PFH to another plan based upon a PFH violates the APA.

2  120.    Order that capitalization of interest on IBR borrowers who change or have changed from a

3  payment plan based upon a PFH to another plan based upon a PFH is reversed, set aside, and

4  vacated.

5  121.    Declare that capitalization of interest on IBR borrowers who missed or miss a

6  recertification deadline violates the Fifth Amendment of the U.S. Constitution.

7  122.    Declare that capitalization of interest on IBR borrowers who missed or miss a

8  recertification deadline is unenforceable because it is both procedurally and substantively

9  unconscionable.

10  123.    Order that DOE resume multi-year consent for borrowers to verify their annual income and

11  eligibility under an IBR plan or any plan based upon a PFH.

12  124.    Order that DOE reimburse Plaintiff for attorney fees and case costs.

13  125.    Order further relief as the nature of the case may require or as may be determined by the

14  Court.

15                              **REQUEST FOR JURY TRIAL**

16  126.    Plaintiff is requesting a jury trial per Rule 38(b) of Fed. Rules of Civ. Proc.

17

18  Dated:  September 26, 2023                    ANDREW KLIMKOWSKI

19

20                              By:    _____

21                                     Andrew Klimkowski
                                       Attorney for Plaintiff Pro Se,
22                                     ANDREW KLIMKOWSKI

23

24

25

26

27

28

Case No.  ****
COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1154.378 4874-4868-6924.1

Andrew Klimkowski
28842 \
San Juan Capistrano, CA 92675

Ronald Reagan Federal Building & U.S. Courthouse
411 West 4th St. Room 1053
Santa Ana, CA 92701-4516

CLERK, U.S. DISTRICT COURT
RECEIVED
SEP 2 8 2023
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION
BY DEPUTY



